## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

Eliseo Cruz Bautista,

      Petitioner,

      v.

Pamela Bondi, Attorney General,

Kristi Noem, Secretary, U.S. Department of
Homeland Security,

Department of Homeland Security,

Todd M. Lyons, Acting Director of
Immigration and Customs Enforcement,

Immigration and Customs Enforcement,

David Easterwood, Acting Director, St. Paul
Field Office Immigration and Customs
Enforcement,

and,

Kelly Leben, Sheriff of Burleigh County.

      Respondents.

**VERIFIED PETITION FOR
WRIT OF HABEAS CORPUS**

1

## INTRODUCTION

1.    Respondents are detaining Petitioner, Mr. Eliseo Cruz Bautista ("Petitioner")
      in violation of law.

2.    Respondents are improperly denying Petitioner access to a bond hearing to
      which he is entitled under 8 U.S.C. § 1226(a).

3.    The continued detention of Petitioner, absent a bond hearing, serves no
      legitimate purpose.

4.    To remedy this unlawful detention, Petitioner seeks declaratory relief and a
      writ of habeas corpus in the form of an order requiring his release or,
      alternatively, to hold a bond hearing pursuant to 8 U.S.C. § 1226(a) within
      three days.

5.    Pending the adjudication of his petition, Petitioner seeks an order restraining
      the Respondents from transferring him to a location where he cannot
      reasonably consult with counsel, such a location to be construed as any
      location outside of the geographic jurisdiction of the day-to- day operations
      of U.S. Customs and Immigration's ("ICE") Fort Snelling, Minnesota of the
      Office of Enforcement and Removal Operations in the State of North
      Dakota.

6.     Pending the adjudication of this Petition, Petitioners also respectfully request that Respondents be ordered to provide seventy-two (72) hour notice of any movement of Petitioner.

7.     Petitioner requests the same opportunity to be heard in a meaningful manner, at a meaningful time, and thus requests 72-hours-notice prior to any removal or movement of him away from the State of North Dakota.

## JURISDICTION AND VENUE

8.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), § 1361 (federal employee mandamus action), § 1651 (All Writs Act), and § 2241 (habeas corpus); Art. I, § 9, cl. 2 of the U.S. Constitution ("Suspension Clause"); 5 U.S.C. § 702 (Administrative Procedure Act); and 28 U.S.C. § 2201 (Declaratory Judgment Act). This action further arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), specifically, 8 U.S.C. § 1254a.

9.     Because Petitioner seeks to challenge his custody as a violation of the Constitution and laws of the United States, jurisdiction is proper in this court.

10.    Federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas petitions by noncitizens challenging the lawfulness or constitutionality of their detention by DHS. *Demore v. Kim*, 538 U.S. 510,

516–17 (2003); *Jennings v. Rodriguez*, 138 S. Ct. 830, 839–41 (2018);

*Nielsen v. Preap*, 139 S. Ct. 954, 961–63 (2019); *Sopo v. U.S. Attorney*

*Gen.*, 825 F.3d 1199, 1209-12 (11th Cir. 2016).

11.  Federal district courts have jurisdiction to enforce 8 U.S.C. § 1226(a)(2).

     This statute, 8 U.S.C. § 1226(a)(2), entitles Petitioner to a bond hearing in

     which an immigration judge may determine his eligibility for release from

     custody.

12.  Venue is proper in this Court pursuant to 28 USC §§ 1391(b), (e)(1)(B), and

     2241(d) because Petitioner is detained within this District. He is currently

     detained at the Burleigh County jail, in Bismark, North Dakota. Venue is

     also proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(A) because

     Respondents are operating in this district.

## PARTIES

13.  Petitioner Cruz Bautista is a citizen of Mexico and a resident of Burleigh

     County, North Dakota. He is not an arriving alien, nor is he seeking

     admission. He is currently in Immigration and Customs Enforcement

     ("ICE") custody at the Burleigh County jail, in Bismark, North Dakota.

14.  Respondent Pamela Bondi is being sued in her official capacity as the

     Attorney General of the United States and the head of the Department of

     Justice, which encompasses the BIA and the immigration judges through the

4

Executive Office for Immigration Review. Attorney General Bondi shares responsibility for implementation and enforcement of the immigration detention statutes, along with Respondent Noem. Attorney General Bondi is a legal custodian of Petitioner.

15. Respondent Kristi Noem is being sued in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, Secretary Noem is responsible for the administration of the immigration laws pursuant to § 103(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1103(a), routinely transacts business in the District of North Dakota, supervises the Fort Snelling ICE Field Office, and is legally responsible for pursuing Petitioner's detention and removal. As such, Respondent Noem is a legal custodian of Petitioner.

16. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

17. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity. Defendant Lyons is responsible for Petitioner's detention.

18. Respondent Immigration and Customs Enforcement (ICE) is the subagency within the Department of Homeland Security responsible for implementing

and enforcing the Immigration & Nationality Act, including the detention of noncitizens.

19.    Respondent David Easterwood is being sued in his official capacity as the Acting Field Office Director for the Fort Snelling Field Office for ICE within DHS. In that capacity, Field Director Olson has supervisory authority over the ICE agents responsible for detaining Petitioner. The address for the Fort Snelling Field Office is 1 Federal Drive, Fort Snelling, Minnesota 55111.

20.    Respondent Sheriff Kelly Leben is being sued in his official capacity as the Sheriff responsible for the Burleigh County Jail. Because Petitioner is detained in the Burleigh County Jail, Respondent has immediate day-to-day control over Petitioner.

## EXHAUSTION

21.    Respondents have asserted authority to detain Petitioner pursuant to the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(a). Petitioner has sought a bond hearing before the Immigration Court in Fort Snelling, but was denied on October 2, 2025, on the ground that the court purportedly lacked jurisdiction. He again sought bond on December 1, 2025, and the court again denied the request on the basis that nothing had changed. This is administrative exhaustion.

22.     Even if Petitioner had not exhausted his administrative remedies, no

statutory requirement of exhaustion applies to Petitioner's challenge to the

lawfulness of his detention. *See, e.g., Araujo-Cortes v. Shanahan*, 35

F. Supp. 3d 533, 538 (S.D.N.Y. 2014) ("There is no statutory requirement

that a habeas petitioner exhaust his administrative remedies before

challenging his immigration detention."); *Rodriguez v. Bostock*, No. 3:25-

CV-05240-TMC, 2025 WL 1193850, at *11 (W.D. Wash. Apr. 24, 2025)

(citing *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal.

2019) ("this Court 'follows the vast majority of other cases which have

waived exhaustion based on irreparable injury when an individual has been

detained for months without a bond hearing, and where several additional

months may pass before the BIA renders a decision on a pending appeal.'");

*Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5 (D.

Mass. July 7, 2025) ((citing *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d

74, 77 (1st Cir. 1997) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146

(1992)).

23.     Furthermore, prudential exhaustion is not required when to do so would be

futile or "the administrative body . . . has . . . predetermined the issue before

it." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992), *superseded by statute

on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81 (2006).

7

24. Any bond request is futile. The Board of Immigration Appeals published decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), binds the immigration court and erroneously denies him access to a bond hearing.

25. Prudential exhaustion is also not required in cases where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy*, 503 U.S. at 147. Every day that Petitioner is unlawfully detained causes him and his family irreparable harm. *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 711 (D. Md. 2016) ("Here, continued loss of liberty without any individualized bail determination constitutes the kind of irreparable harm which forgives exhaustion."); *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (explaining that "a loss of liberty" is "perhaps the best example of irreparable harm"); *Hamama v. Adducci*, 349 F. Supp. 3d 665, 701 (E.D. Mich. 2018) (holding that "detention has inflicted grave" and "irreparable harm" and describing the impact of prolonged detention on individuals and their families).

26. Prudential exhaustion is additionally not required in cases where the agency "lacks the institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." *McCarthy*, 503 U.S. at 147–48.

8

27. Immigration agencies have no jurisdiction over constitutional challenges of the kind Petitioner raises here. *See, e.g., Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations."); *Matter of Akram*, 25 I. & N. Dec. 874, 880 (BIA 2012); *Matter of Valdovinos*, 18 I. & N. Dec. 343, 345 (BIA 1982); *Matter of Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997); *Matter of U-M-*, 20 I. & N. Dec. 327 (BIA 1991).

28. Because requiring Petitioner to exhaust administrative remedies would be futile, would cause him irreparable harm, and the immigration agencies lack jurisdiction over the constitutional claims, even if Petitioner had not exhausted his administrative remedies, this Court should not require exhaustion as a prudential matter here.

## FACTUAL ALLEGATIONS & PROCEDURAL HISTORY

29. Petitioner Cruz Bautista is a native and citizen of Mexico who was born on April 13, 1990.

30. Petitioner Cruz Bautista entered the United States without inspection on March 31, 2006, at the age of 15.

31. On June 9, 2010, Petitioner Cruz Bautista graduated from Earl Wooster High School, in Reno, Nevada.

32.    From 2009 to 2013, Petitioner completed three years of college at Truckee

Meadows Community College, earning a 3.08 GPA.

33.    From 2013 to the date of his detention on September 2, 2025, Petitioner

Cruz Bautista consistently held employment and paid his taxes annually.

34.    On September 8, 2015, Petitioner's mother filed for a U-visa, but Petitioner

was denied derivative status when that application was approved on January

27, 2020, because he was too old to qualify as her child under the

immigration laws.

35.    On August 17, 2020, Petitioner applied for Deferred Action for Childhood

Arrivals ("DACA") but was denied because the United States Immigration

and Citizenship Services had stopped taking DACA applications at that time.

36.    On February 4, 2021, Petitioner again applied for DACA and that

application remains pending. Initially that application was held, but not

adjudicated pursuant to an order in *Batalla Vidal, et al. v. Wolf, et al.*, 16-

CV-4756 (NGG) (VMS) (E.D.N.Y.), but USCIS has resumed adjudicating

DACA applications, meaning his application may be adjudicated on the

merits. *See Texas, et al v. United states et al.*, No. 23-40653, Doc. 212 (5th

Cir. Jan. 17, 2025).

37.    Petitioner Cruz Bautista has no criminal history save for minor traffic

violations, none of which involved drugs or alcohol.

38.   On September 5, 2025, Respondents, through the Board of Immigration

Appeals, issued a precedential decision, binding on lower immigration

courts, finding that "Immigration Judges lack authority to hear bond requests

or to grant bond to aliens who are present in the United States without

admission." *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

39.   On September 2, 2025, Respondents took Petitioner Cruz Bautista into

custody as he was leaving work. Petitioner was about three blocks from his

home when Respondents effectuated a traffic stop and took him into

custody.

40.   Respondents did not provide, produce, or show Petitioner a warrant for his

arrest at the time of his arrest, but they did produce one and show it to him in

custody several days later.

41.   On September 19, 2025, Petitioner Cruz Bautista requested a bond hearing,

but the immigration judge held that the court lacked jurisdiction to hold such

a hearing on October 2, 2025.

42.   On October 3, 2025, Petitioner Cruz Bautista married his girlfriend, U.S.

Citizen Amy Lynn Carrizales.

43.   On October 31, 2025, Amy Lynn Carrizales filed an I-130 petition on behalf

of Petitioner Cruz Bautista to classify him as her spouse for immigration

purposes.

11

44.    The approval of an I-130 will permit Petitioner Cruz Bautista to initiate a

process to normalize his immigration status through the filing of an I-601A

provisional waiver under 8 C.F.R. § 212.7(e) and eventual consular

processing under 8 U.S.C. § 1181(a).

45.    Petitioner Cruz Bautista has no criminal history that would subject him to 8

U.S.C. § 1226(c).

46.    On November 21, 2025, Petitioner Cruz Bautista was ordered removed after

his counsel in that case failed to bring the pending DACA application to the

attention of the Court. That decision is currently on appeal, meaning the

order is not administratively final, and Petitioner remains eligible for bond

under 8 U.S.C. § 1226(a). *See* 8 U.S.C. § 1101(a)(47)(B).

47.    On November 25, 2025, a district court judge in the Central district of

California certified a class of:

> All noncitizens in the United States without lawful status who (1)
> have entered or will enter the United States without inspection;
> (2) were not or will not be apprehended upon arrival; and (3) are
> not or will not be subject to detention under 8 U.S.C. § 1226(c),
> § 1225(b)(1), or § 1231 at the time the Department of Homeland
> Security makes an initial custody determination.

Order Granting Petitioner's Motion for Class Certification, *Maldonado*

*Bautista et al v. Santacruz et al.*, 5:25-cv-01873-SSS-BFM, Doc. 82, at 15

(C.D. Cal. Nov. 25, 2025).

48.  On November 25, 2025, that same judge "declar[ed] the new DHS Policy [treating long present noncitizens who entered without admission as subject to mandatory custody] unlawful" as to the certified class and "extend[ed] the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole." Order Granting Petitioner's Motion for Class Certification, *Maldonado Bautista et al v. Santacruz et al.*, 5:25-cv-01873-SSS-BFM, Doc. 81, at 9-14 (C.D. Cal. Nov. 25, 2025).

49.  On December 1, 2025, Petitioner again requested a bond hearing, but the immigration court denied that request on the grounds that nothing had changed since the first bond request.

50.  Respondents have held Petitioner Cruz Bautista in custody since that time.

51.  Petitioner Cruz Bautista is presently held at the Burleigh County jail, in Bismark, North Dakota.

## **LEGAL FRAMEWORK**

52.  Removal proceedings are governed under 8 U.S.C. § 1229a, which provides that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien," 8 U.S.C. § 1229a(a)(1) and that "[u]nless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States." 8 U.S.C. § 1229a(a)(3).

53.    To initiate removal proceedings, "written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)." 8 U.S.C. § 1229(a)(1).

54.    The "[a]pprehension and detention of aliens" is governed under 8 U.S.C. § 1226, which provides that:

> **On a warrant issued by the Attorney General**, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, **the Attorney General … may release the alien on bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General.**

8 U.S.C. § 1226(a)(2)(A) (emphasis added).

55.    The regulations provide that, to detain a person under 8 U.S.C. § 1226(a), the Department must issue an I-200 to take a person into custody; and that such a person is subject to release on bond. The regulation states:

(b) Warrant of arrest—

> (1) In general. At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, **the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest.** A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter.

14

(2) If, after the issuance of a warrant of arrest, a determination is made not to serve it, any officer authorized to issue such warrant may authorize its cancellation.

(c) Custody issues and release procedures—

(1) In general.

(i) After the expiration of the Transition Period Custody Rules (TPCR) set forth in section 303(b)(3) of Div. C of Pub.L. 104–208, no alien described in section 236(c)(1) **of the Act may be released from custody during removal proceedings except pursuant to section 236(c)(2) of the Act.**

8 C.F.R. § 236.1(b).

56.    8 U.S.C. 1226(a) is the default detention authority, and it applies to anyone who is detained "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a).

57.    8 U.S.C. 1226(a) applies to those who are "already in the country" and are detained "pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

58.    8 U.S.C. § 1226(a) applies not just to persons who are deportable, but also to noncitizens who are inadmissible. Specifically, while § 1226(a) provides the general right to seek release, § 1226(c) carves out discrete categories of noncitizens from being released— including certain categories of

15

inadmissible noncitizens—and subjects those limited classes of inadmissible

aliens instead to mandatory detention. *See, e.g.*, 8 U.S.C. § 1226(c)(1)(A),

(C).

59.    The Laken Riley Act (LRA) added language to § 1226 that directly

references people who have entered without inspection or who are present

without authorization. *See* LAKEN RILEY ACT, PL 119-1, January 29, 2025,

139 Stat 3. Pursuant to these amendments, people charged as inadmissible

under § 1182(a)(6)(A) (the inadmissibility ground for entry without

inspection) or (a)(7)(A) (the inadmissibility ground for lacking valid

documentation to enter the United States) and who have been arrested,

charged with, or convicted of certain crimes are subject to § 1226(c)'s

mandatory detention provisions. *See* 8 U.S.C. § 1226(c)(1)(E).

60.    By including such individuals under § 1226(c), Congress reaffirmed that §

1226 covers persons charged under § 1182(a)(6)(A) or (a)(7). Generally

speaking, grounds of deportability (found in 8 U.S.C. § 1227) apply to

people like lawful permanents residents, who have been lawfully admitted

and continue to have lawful status, while grounds of inadmissibility (found

in § 1182) apply to those who have not yet been admitted to the United

States. *See, e.g., Barton v. Barr*, 590 U.S. 222, 234 (2020) ("specific

exceptions' to a statute's applicability, it 'proves' that absent those

16

exceptions, the statute generally applies.") (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)).

61.    The [i]nspection by immigration officers [and] expedited removal of inadmissible arriving aliens, [and] referral for hearing" is governed under 8 U.S.C. § 1225, which provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).

62.    "All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3).

63.    "If an immigration officer determines that an alien … who is arriving in the United States … is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum." 8 U.S.C. § 1225(b)(1)(A)(i).

64.   "If the officer determines at the time of the interview that an alien has a credible fear of persecution … the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

65.   "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien **seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

66.   8 U.S.C. § 1225(b)'s mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

67.   "Read most naturally, §§ 1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded. Until that point, nothing in the statutory text imposes a limit on the length of detention, and neither provision says anything about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018).

68.   By regulation, "[a]rriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien

interdicted in international or United States waters and brought into the

United States by any means, whether or not to a designated port-of-entry,

and regardless of the means of transport. An arriving alien remains an

arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and

even after any such parole is terminated or revoked." 8 C.F.R. § 1.2.

69.    "[A]n immigration judge may not redetermine conditions of custody

imposed by the Service with respect to … [a]rriving aliens in removal

proceedings, including aliens paroled after arrival pursuant to section

212(d)(5) of the Act." 8 C.F.R. § 1003.19(h)(2)(i)(B).

70.    As such, arriving aliens are not entitled to bond, nor, arguably, are aliens

falling within the confines of 8 U.S.C. § 1225(b).

71.    Congress did not intend to subject all people present in the United States

after an unlawful entry to mandatory detention if arrested. Prior to Illegal

Immigration Reform and Immigration Responsibility Act ("IIRIRA"), which

codified both 8 U.S.C. § 1225 and 8 U.S.C. § 1226, aliens present without

admission were not necessarily subject to mandatory detention. See 8 U.S.C.

§ 1252(a)(1) (1994) (authorizing Attorney General to arrest noncitizens for

deportability proceedings, which applied to all persons within the United

States).

72.    In articulating the impact of IIRIRA, Congress noted that the new § 1226(a) merely "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond a[] [noncitizen] who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229 (emphasis added). *See* also H.R. Rep. No. 104-828, at 210 (same).

73.    Respondents' longstanding practice of considering people like Petitioner as detained under § 1226(a) further supports reading the statute to apply to them. Typically, DHS issues a person Form I-286, Notice of Custody Determination, or Form I-200, Warrant for Arrest of Alien, stating that the person is detained under § 1226(a) (§ 236 of the INA).

74.    As these arrest documents demonstrate, DHS has long acknowledged that § 1226(a) applies to individuals who entered the United States unlawfully, but who were later apprehended within the country's borders long after their entry. Such a longstanding and consistent interpretation "is powerful evidence that interpreting the Act in [this] way is natural and reasonable." *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *See also Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relying in part on "over 60 years" of government's interpretation and practice to reject its new proposed interpretation of the law at issue).

75.  EOIR regulations have long recognized that Petitioner are subject to detention under § 1226(a). Nothing in 8 C.F.R. § 1003.19—the regulatory basis for the immigration court's jurisdiction—provides otherwise.

76.  In fact, EOIR confirmed that § 1226(a) applies to Petitioner when it promulgated the regulations governing immigration courts and implementing § 1226 decades ago. At that time, EOIR explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323.

77.  On December 5, 2025, Judge Daniel Hovland just held that Respondents' position is contrary to law in a materially indistinguishable case. *See Beltran Baron v. Bondi et al.*, 25-cv-00258-DLH-CRH, Doc. 18 (D.N.D. Dec. 5, 2025).

78.  This has also been the overwhelming consensus among district courts within the Eighth Circuit. See *Maldonado v. Olson*, 795 F. Supp. 3d 1134 (D. Minn. 2025); *J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Belsai v. Bondi*, No. 25-CV-3682

21

(KMM/EMB), 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Avila v. Bondi*,

No. CV 25-3741 (JRT/SGE), 2025 WL 2976539 (D. Minn. Oct. 21, 2025);

*Eliseo A.A. v. Olson*, No. CV 25-3381 (JWB/DJF), 2025 WL 2886729 (D.

Minn. Oct. 8, 2025); *Andres R.E. v. Bondi*, No. 25-CV-3946 (NEB/DLM),

2025 WL 3146312 (D. Minn. Nov. 4, 2025); *E.M. v. Noem*, No. 25-CV-

3975 (SRN/DTS), 2025 WL 3157839 (D. Minn. Nov. 12, 2025); *Francisco

T. v. Bondi*, No. 25-CV-03219 (JMB/DTS), 2025 WL 3236513 (D. Minn.

Nov. 19, 2025); *Santos M.C. v. Olson*, No. 25-CV-4264 (PJS/DJF), 2025

WL 3281787 (D. Minn. Nov. 25, 2025); *Santuario v. Bondi*, No. 25-4296

(JRT/JFD), 2025 WL 3469577 (D. Minn. Dec. 2, 2025); *Ferrera Bejarano

v. Bondi*, 25-cv-03236 (NEB/JFD), (D. Minn. Aug 18, 2025); *Aguilar

Vazquez v. Bondi*, 25-cv-03162 (KMM/ECW), (D. Minn. Aug 19, 2025);

*Giron Reyes v. Lyons*, No. C25-4048 (LTS/MAR), 2025 WL 2712427 (N.D.

Iowa Sept. 23, 2025); *De La Cruz v. Noem*, No. C25-150-LTS, 2025 WL

3110876 (N.D. Iowa Oct. 20, 2025); *Garcia Picazo v. Sheehan*, No. C25-

4057-LTS-MAR, 2025 WL 3006188 (N.D. Iowa Oct. 27, 2025); *Lopez v.

Sheehan*, No. 25-CV-4052-CJW-KEM, 2025 WL 3046183 (N.D. Iowa Oct.

30, 2025); *Chilel Chilel v. Sheehan*, No. C25-4053-LTS-KEM, 2025 WL

3158617 (N.D. Iowa Nov. 12, 2025); *Hernandez Marcelo v. Trump*, 2025

WL 2741230 (S.D. Iowa Sept. 10, 2025); *Barrajas v. Noem*, No. 4:25-CV-

00322-SHL-HCA, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); *Helbrum v. Williams Olson*, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273 (S.D. Iowa Sept. 30, 2025); *Garcia Jimenez v. Kramer*, No. 4:25CV3162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Anicasio v. Kramer*, No. 4:25CV3158, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); *Jacinto v. Trump*, No. 4:25CV3161, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); *Carmona-Lorenzo v. Trump*, No. 4:25CV3172, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Cortes Fernandez v. Lyons*, No. 8:25CV506, 2025 WL 2531539 (D. Neb. Sept. 3, 2025); *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566 (D. Neb. Sept 3, 2025); *Arce v. Trump*, 2025 WL 2675934, 2025 WL 2675934 (D. Neb. Sept. 18, 2025); *Sales Ambrocio v. Noem*, No. 4:25CV3226, 2025 WL 3295530 (D. Neb. Nov. 25, 2025); *Eshdavlatov v. Arnott*, No. 6:25-CV-00844-MDH, 2025 WL 3217838 (W.D. Mo. Nov. 18, 2025); *Rodriguez v. Arnott*, No. 6:25-CV-00836-MDH, 2025 WL 3218553 (W.D. Mo. Nov. 18, 2025); *Mairena-Munguia v. Arnott*, No. 6:25-CV-3318-MDH, 2025 WL 3229132 (W.D. Mo. Nov. 19, 2025). *But see Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Suarez v. Noem*, No. 1:25-CV-00202-JMD, 2025 WL 3312168 (E.D. Mo. Nov. 28, 2025).

79.   Nationally, the picture is the same, as "[a]t least 225 judges have ruled in

more than 700 cases that the administration's new policy, which also

deprives people of an opportunity to seek release from an immigration court,

is a likely violation of law and the right to due process." Kyle Cheney, *More*

*than 220 judges have now rejected the Trump admin's mass detention*

*policy*, POLITICO (Nov. 28, 2025), https://www.politico.com/news/2025/11/

28/trump-detention-deportation-policy-00669861.

## REMEDY

80.   Respondents' detention of Petitioner under 8 U.S.C. § 1225(b)(2) violates

the statute and the Due Process Clause of the United States Constitution.

Petitioner's ongoing detention violates the Fifth Amendment's guarantee

that "[n]o person shall be . . . deprived of life, liberty, or property without

due process of law." U.S. Const., Amend. 5.

81.   Due Process requires that detention "bear [] a reasonable relation to the

purpose for which the individual [was] committed." *Zadvydas, v. Davis*, 533

U.S. 678, 690 (2001) (citing *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

82.   Petitioner seeks immediate release to the extent that Respondents justify his

detention on 8 U.S.C. § 1225(b)(2), which plainly does not apply to him, and

requires release as a matter of law.

83. Although neither the Constitution nor the federal habeas statutes delineate the necessary content of habeas relief, *I.N.S. v. St. Cyr*, 533 U.S. 289, 337 (2001) (Scalia, J., dissenting) ("A straightforward reading of [the Suspension Clause] discloses that it does not guarantee any content to . . . the writ of habeas corpus"), implicit in habeas jurisdiction is the power to order release. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) ("[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained.").

84. The Supreme Court has noted that the typical remedy for unlawful detention is release from detention. *See, e.g., Munaf v. Geren*, 553 U.S. 674 (2008) ("The typical remedy for [unlawful executive detention] is, of course, release."); *See also Wajda v. US*, 64 F.3d 385, 389 (8th Cir. 1995) (stating the function of habeas relief under 28 U.S.C. § 2241 "is to obtain release from the duration or fact of present custody.").

85. That courts with habeas jurisdiction have the power to order outright release is justified by the fact that, "habeas corpus is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995), and that as an equitable remedy, federal courts "[have] broad discretion in conditioning a judgment granting habeas relief [and are] authorized . . . to dispose of habeas corpus matters 'as law and justice require.'" *Hilton v. Braunskill*, 481 U.S. 770, 775

(1987), quoting 28 U.S.C. § 2243. An order of release falls under court's broad discretion to fashion relief. *See, e.g., Jimenez v. Cronen*, 317 F. Supp. 3d 626, 636 (D. Mass. 2018) ("Habeas corpus is an equitable remedy. The court has the discretion to fashion relief that is fair in the circumstances, including to order an alien's release.").

86.    Alternatively, if Respondents suggest they have authority to detain Petitioner under 8 U.S.C. § 1226(a), Petitioner requests a constitutionally adequate custody redetermination hearing in which he is not erroneously treated as detained pursuant to 8 U.S.C. § 1225(b)(2) and is instead treated as a detainee under 8 U.S.C. § 1226(a) within three calendar days.

## CAUSE OF ACTION
## COUNT ONE: DECLARATORY RELIEF

87.    Petitioner re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

88.    Petitioner requests a declaratory judgment pursuant to 28 U.S.C. § 2201 that Petitioner is not subject to detention under to 8 U.S.C. § 1225(b)(2) and must be released unless Respondents assert authority to detain him under 8 U.S.C. § 1226(a).

89.    In the event Respondents assert that Petitioner is detained under 8 U.S.C. § 1226(a), Petitioner requests a declaratory judgment pursuant to 28 U.S.C. § 2201 stating that Petitioner is entitled to a bond hearing to determine

whether he is eligible for release from Respondents' custody pursuant to 8 U.S.C. § 1226(a)(1).

## COUNT TWO: VIOLATION OF THE IMMIGRATION & NATIONALITY ACT – 8 U.S.C. § 1225(b)(2)

90.   Petitioner re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

91.   Section 1225 of Title 8 of the U.S. Code governs aliens arriving at the border and seeking admission from outside the country. *See* 8 U.S.C. § 1225.

92.   8 U.S.C. § 1225(b)(2)(A), specifically, cannot apply as it only applies to those "applicants for admission" who are "seeking admission" at the time of detention and Petitioner was not "seeking admission" at the time he was detained, nor is he doing so now. 8 U.S.C. § 1225(b)(2)(A).

93.   As Respondents assert authority to detain Petitioner under 8 U.S.C. § 1225(b)(2)(A), and no such authority exists under that provision, he requests that he be immediately released.

## COUNT THREE: VIOLATION OF THE IMMIGRATION & NATIONALITY ACT – 8 U.S.C. § 1226(a)

94.   Petitioner re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

95.   Section 1226 of Title 8 of the U.S. Code governs the detention of aliens pending a determination of removal from the United States.

96.   Under the provision, noncitizens "may [be] release[d] … on bond of at least $1,500." 8 U.S.C. § 1226(a)(2)(A).

97.   Under this provision, the denial of Petitioner's bond eligibility is in violation of 8 U.S.C. § 1226(a)(2)(A), which specifically makes him eligible for bond.

98.   If Respondents do not release Petitioner without any conditions, he requests that he be afforded the opportunity to present his case for release in a bond hearing pursuant to 8 U.S.C. § 1226(a)(2)(A) within three days.

## COUNT FOUR: VIOLATION OF THE FIFTH AMENDMENT

99.   Petitioner re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

100.  The Fifth Amendment Due Process Clause protects against arbitrary detention and requires that detention be reasonably related to its purpose and accompanied by adequate procedures to ensure that detention is serving its legitimate goals.

101.  Petitioner is not subject to mandatory custody under the Immigration & Nationality Act and is therefore entitled to a bond hearing in which a neutral arbiter may determine the justification for his continued detention under 8 U.S.C. § 1226(a)(2)(A), the denial of which constitutes a violation of the Fifth Amendment's guarantee of due process.

## COUNT FIVE: VIOLATION OF 8 C.F.R. §§ 236.1, 1236.1 AND 1003.19 -
## UNLAWFUL DENIAL OF RELEASE ON BOND

102.  Petitioner re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

103.  In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at10323 (emphasis added).

104.  The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before immigration courts under 8 U.S.C. § 1226 and its implementing regulations.

105.  Nonetheless, DHS and the Fort Snelling Immigration Court have adopted a policy and practice of applying § 1225(b)(2) to Petitioner and others in the same position.

106.  The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

107.   As such, the Court must order the Respondents afford Petitioner a bond

hearing to comport with these regulatory requirements.

### COUNT SIX: VIOLATION OF CLASS ORDER IN *MALDONADO BAUTISTA ET AL V. SANTACRUZ ET AL.*, 5:25-CV-01873-SSS-BFM (C.D. CAL. NOV. 25, 2025)

108.   Petitioner is plainly a member of the *Maldonado Bautista* class, as he is a:

> [N]oncitizens in the United States without lawful status who (1)
> ha[s] entered … the United States without inspection; (2) w[as]
> not … apprehended upon arrival; and (3) [is] not … subject to
> detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at
> the time the Department of Homeland Security ma[de] an initial
> custody determination.

Order Granting Petitioner's Motion for Class Certification, *Maldonado

Bautista et al v. Santacruz et al.*, 5:25-cv-01873-SSS-BFM, Doc. 82, at 15

(C.D. Cal. Nov. 25, 2025).

109.   "[T]he same declaratory relief granted to Petitioners [is available] to the

Bond Eligible Class as a whole." Order Granting Petitioner's Motion for

Class Certification, *Maldonado Bautista et al v. Santacruz et al.*, 5:25-cv-

01873-SSS-BFM, Doc. 81, at 9-14 (C.D. Cal. Nov. 25, 2025).

110.   Several Respondents are Defendants in *Maldonado Bautista*, and is thus

bound by the ruling there, which has the full "force and effect of a final

judgment." 28 U.S.C. § 2201(a).

111.   It is a "basic proposition that all orders and judgments of courts must be

complied with promptly," *Maness v. Meyers*, 419 U.S. 449, 458 (1975), and

30

thus, in "suits against government officials and departments, [courts] assume that they will comply with declaratory judgments." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023).

112. This is because declaratory judgments like the one in *Maldonado Bautista* have "the same effect as an injunction in fixing the parties' legal entitlements." *Florida ex rel. Bondi v. U.S. Dep't of Health & Hum. Servs.*, 780 F. Supp. 2d 1307, 1316 (N.D. Fla. 2011).

113. Pursuant to the class in *Bautista v. Santacruz*, Petitioner must be afforded a bond hearing.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner Cruz Bautista, asks this Court for the following relief:

1. Assume jurisdiction over this matter.

2. Issue an order restraining Respondents from attempting to move Petitioner from the State of North Dakota during the pendency of this Petition.

3. Issue an order requiring Respondents to provide 72-hour notice of any intended movement of Petitioner.

4. Expedite consideration of this action pursuant to 28 U.S.C. § 1657 because it is an action brought under 28 U.S.C. § 153.

5. Order Petitioner's immediate release, or, alternatively, order Respondents to hold a bond hearing pursuant to 8 U.S.C. § 1226(a) within three days.

6.      Declare that Respondents' action is arbitrary and capricious.

7.      Declare that Respondents failed to adhere to its regulations.

8.      Declare that Petitioner's detention absent a bond hearing violates the Due

        Process Clause of the Fifth Amendment.

9.      Grant Petitioner reasonable attorney fees and costs pursuant to the Equal

        Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

10.     Grant all further relief this Court deems just and proper.


DATED: December 10, 2025          Respectfully submitted,

                                  /s/ Cameron Giebink

                                  Cameron Giebink
                                  MN Attorney Lic. No. 0402670
                                  Wilson Law Group
                                  3019 Minnehaha Avenue
                                  Minneapolis, MN 55406
                                  (612) 436-7100 / cgiebink@wilsonlg.com

                                  Attorney for Petitioner

**Verification by Someone Acting on
Petitioner's Behalf Pursuant to 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I and others working under my supervision have discussed with the Petitioner the events described in this Petition. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus, including the statements regarding Petitioner's detention status, are true and correct to the best of my knowledge.

/s/ Cameron Giebink                                    Date: December 10, 2025