## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

Eliseo Cruz Bautista,

    Petitioner,

    v.

Pamela Bondi, Attorney General;

Kristi Noem, Secretary, U.S. Department of
Homeland Security;

Department of Homeland Security;

Todd M. Lyons, Acting Director of
Immigration and Customs Enforcement,

David Easterwood , Acting Director, Saint
Paul Field Office Immigration and Customs
Enforcement;

and,

Kelly Leben, Sheriff of Burleigh County.

    Respondents.

**1:25-cv-00280-CRH**

**MEMORANDUM IN
SUPPORT OF
EMERGENCY MOTION
FOR TEMPORARY
RESTRAINING ORDER OR
PRELIMINARY
INJUNCTION**

## <u>INTRODUCTION</u>

Petitioner Eliseo Cruz Bautista (hereinafter "Petitioner") has been unlawfully

detained by Immigration and Customs Enforcement ("ICE") and denied the right to

release on bond.

Petitioner requests a Temporary Restraining Order or Preliminary Injunction (hereinafter "injunctive relief") to (i) enjoin Respondents from moving Petitioner outside of the geographic boundaries of the District of North Dakota and (ii) order Respondents release Petitioner within 3 days or (iii) provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a)(2)(A) within 3 days.

Petitioner has complied with the requirements of Rule 65(b), by providing notice to the U.S. Attorney's office via FedExed Documents, and by emailing counsel all filings. *See* Ex. A. Notice is not required, as this district has ruled on a materially identical case within the last week, *see Beltran Baron v. Bondi et al.*, 25-cv-00258-DLH-CRH, Doc. 18 (D.N.D. Dec. 5, 2025), and nothing on this record would justify a departure from that well-reasoned decision. Moreover, the harms of ongoing detention, particularly without bond, are well established, and articulated, *infra*. An order requiring a custody hearing governed under 8 U.S.C. § 1226(a) would resolve the core legal issue while extending deference to the Agency to apply the law regarding the custody of noncitizens like Petitioner as it did for the 29 years proceedings Respondents' abrupt policy change in July of the this year. *See* Ex. A.

Petitioner's continued detention, purportedly under 8 U.S.C. § 1225(b)(2)(A), runs contrary to the statute as that provision cannot apply to him at all and therefore

detention is unlawful and release is required. His continued detention under 8 U.S.C. § 1226(a), in the absence of an opportunity to be heard in a bond hearing is also inconsistent with the INA. Respondents have repeatedly indicated that individuals similarly situated to Petitioner were detained under 8 U.S.C. § 1226, and the plain text, legislative history, and longstanding administrative practice reinforce the conclusion that Respondents cannot detain him under 8 U.S.C. § 1225(b)(2)(A) now, having detained him some twenty years after he arrived in the United States.

Petitioner is very likely to prevail on the merits of his case because unlawful detention, particularly absent the ability to apply for and post bond, is a quintessential irreparable harm. Respondents conversely have no interest in unlawfully detaining Petitioner. The Court should grant this motion.

## FACTS

Petitioner, a native and citizen of Mexico, entered the United States without inspection on March 31, 2006, at the age of 15. *See* ECF No. 1 ¶¶ 29-30. He has had an application for Deferred Action for Childhood Arrivals pending for years. *See* ECF No. 1 ¶ 36. He is married to a United States citizen. *See* ECF No. 1 ¶ 42. An I-130 petition was filed on his behalf on October 31, 2025. *See* ECF No. 1 ¶ 43. Respondents arrested Petitioner in North Dakota on September 2, 2025. *See* ECF No. 1 ¶ 39. A warrant was not provided at the time, but one was several days later. *See* ECF No. 1 ¶ 40. Petitioner requested a bond on September 19, 2025, but the

immigration judge indicated the court lacked jurisdiction to hear it. *See* ECF No. 1 ¶ 41. On December 1, 2025, Petitioner again requested a bond hearing, but the immigration court again denied that request on the grounds that nothing had changed since the first bond request, despite the class order in *Maldonado Bautista et al v. Santacruz et al.*, 5:25-cv-01873-SSS-BFM, Doc. 81, at 9-14 (C.D. Cal. Nov. 25, 2025). *See* ECF No. 1 ¶ 49. Petitioner remains in Burleigh County Jail.

## ARGUMENT

### I.    THE COURT HAS JURISDICTION.

"A person challenging the lawfulness of immigration-related detention may also avail themselves of a writ of habeas corpus." *Maldonado v. Olson*, 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (citing *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020)). Respondents may contend that 8 U.S.C. § 1252(b)(9) precludes review of Petitioner's claims.  However, § 1252(b)(9) comes under the authority of § 1252(b), which lists "[r]equirements for review of orders of removal." This provision channels review of "final orders of removal" to federal courts of appeals. 8 U.S.C. § 1252(b)(9).

Nothing in this record indicates that any final order of removal has been issued for Petitioner. Without a final order of removal, § 1252(b)(9) alone does not bar this Court from reviewing Petitioner's injunctive relief request regarding the legality of the new DHS policy and bond orders applying § 1225 rather than § 1226(a). Indeed,

custody is entirely separate and independent from removal proceedings. *Compare* 8 U.S.C. § 1229a, *with* 8 U.S.C. § 1226. By regulation, "[c]onsideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d). Custody and removal have nothing to do with each other. The Supreme Court has also rejected the government's proffered broad interpretation of 8 U.S.C. § 1252(b)(9) as it "would lead to staggering results." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018).

8 U.S.C. § 1252(g) also is irrelevant. Petitioner is asserting that the application of 8 U.S.C. § 1225(b)(2)(A) was improper and that he is not subject to mandatory detention. He is not challenging any decision to commence proceedings, adjudicate cases, or execute removal orders. These matters are "separate and apart from" custody, 8 C.F.R. § 1003.19(d), which is what is challenged here. Moreover, the initiation of proceedings is governed by 8 U.S.C. § 1229, regardless of whether the mandatory detention provisions at 8 U.S.C. § 1225(b)(2)(A), or the discretionary detention framework at 8 U.S.C. § 1226(a)(2)(A), apply. Proceedings are commenced with the filing of an NTA that complies with the requirements at 8 U.S.C. § 1229(a). *Cf.* 8 U.S.C. §§ 1225(b)(2)(A); 1229(a); 1229a.

As such, Respondents have not "commenced" proceedings under 8 U.S.C. § 1225(b)(2). Section 1229 is titled "initiation of proceedings" for a reason. It governs that process. This matter is a challenge to how to interpret the sections that address Respondents' authority to detain, not commence, initiate, or execute the removal process. Petitioner is not challenging any action taken under 8 U.S.C. § 1229.

Furthermore, the Supreme Court has previously characterized § 1252(g) as a narrow provision, determining that it applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). The Supreme Court found it "implausible that the mention of *three discrete events* along the road to deportation was a shorthand way to referring to all claims arising from deportation proceedings." *Id.* (emphasis added).

Moreover, even if this suit did somehow relate to the discrete events outlined at 8 U.S.C. § 1252(g), the Eighth Circuit has explicitly observed "an exception to § 1252(g) for a habeas claim raising a pure question of law." *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (citing *Jama v. I.N.S.*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd sub nom. Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 125 S. Ct. 694, 160 L. Ed. 2d 708 (2005)). This is a pure question of law in the habeas context.

8 U.S.C. § 1252(g) does not apply because resolving the legal authority of detention is the question before the Court.

Finally, section 1252, titled "Judicial Review of Orders of Removal," contains a provision detailing "[m]atters not subject to judicial review." *See* 8 U.S.C. § 1252(a)(2). This provision contains four subsections outlining categories of claims that are not subject to judicial review. *See* 8 U.S.C. § 1252(a)(2)(A)–(D). None of these subsections precluding judicial review apply to this matter, as the specified statutory provisions do not cite to 8 U.S.C. §§ 1225 or 1226, which are the provisions in dispute. No part of § 1252 deprives the Court of jurisdiction.

## II.     INJUNCTIVE RELIEF IS APPROPRIATE.

"[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). The relevant factors are: 1) the likelihood of irreparable harm; 2) the likelihood of success on the merits; 3) relevant hardships, and 4) public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981). The Eighth Circuit has held that the first two factors are particularly important as they comprise what is known as the "traditional test" employed to evaluate the necessity of a Temporary Restraining Order ("TRO"). *Id.* at 12. These factors all militate towards a TRO.

**A. Likelihood of Irreparable Harm**

At the outset, "the equitable balancing test a court must conduct using the *Dataphase* factors requires an initial determination that threatened irreparable harm exists." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987). It most certainly does in this case.

Petitioner's "loss of liberty threatens irreparable harm." *See Beltran Baron v. Bondi et al.*, 25-cv-00258-DLH-CRH, Doc. 18, at 15 (D.N.D. Dec. 5, 2025). This district has already held that indistinguishable facts constitute irreparable harm for the purpose of injunctive relief. *See id.* at 16. Several other district courts in the Eighth Circuit have similarly recognized that the continued detention of an individual constitutes irreparable harm. *See Jose J.O.E. v. Bondi*, 2025 WL 2466670, at *6 ("there is no question that [Petitioner] will suffer irreparable harm if he is denied the opportunity for a bond hearing"); *see also Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (recognizing "a loss of liberty" is "perhaps the best example of irreparable harm"). Indeed, "[f]reedom from imprisonment lies at the heart of the liberty protected by the Due Process Clause." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). Petitioner has been detained without a bond since September 2, 2025, despite his clear statutory eligibility for one under 8 U.S.C. § 1226(a)(2)(A).

Since September 2, 2025, Petitioner has remained detained at the Burleigh County Jail, which is "not meaningfully different from a penal institution for

criminal detention." *Ararso U.M. v. Barr*, No. 19-CV-3046 (PAM/DTS), 2020 WL 1452480, at *4 (D. Minn. Mar. 10, 2020), *report and recommendation adopted*, No. 19CV3046 (PAM/DTS), 2020 WL 1445810 (D. Minn. Mar. 25, 2020) (citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019)). The government's actions have already deprived Petitioner of his liberty, and because these violations continue each day he remains in custody, he has suffered and will continue to suffer actual prejudice. *See Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) (prejudice exists where an alternate result may well have occurred absent the violation). Immediate relief is warranted to halt ongoing harm and restore his rights. Petitioner's continued unjustified detention constitutes irreparable and immediate harm and justifies the issuance of injunctive relief while his habeas proceedings are pending.

Petitioner will be further harmed if Respondents are not enjoined from transferring him to a detention facility in another state. A transfer further impedes vital attorney-client exchanges by limiting how Petitioner and his attorneys can communicate confidentially. Moving Petitioner out of this District, therefore, inhibits these crucial attorney-client communications. It also complicates the need for any appearance in this Court. Given the time-sensitive nature of continued unlawful detention, this too is irreparable harm.

Given the harm of unlawful detention absent a bond, as well as the issues arising from his movement outside of North Dakota, irreparable harm has been established.

## B. Likelihood of Success on Merits

"While no single factor is determinative, the probability of success factor is the most significant" in determining whether to injunctive relief. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). Analyzing the likelihood of a party's success on the merits is not an inquiry aimed at pinning down the mathematical probability that a plaintiff will prevail on the merits. Rather, the court seeks to ascertain whether the "balance of equities so favors the movant that justice requires the Court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc.*, 640 F.2d at 113.

This district has already ruled on this issue. *See Beltran Baron v. Bondi et al.*, 25-cv-00258-DLH-CRH, Doc. 18 (D.N.D. Dec. 5, 2025). The facts in that case are materially identical to the facts in this matter and there the court held that "the discretionary detention framework of 8 U.S.C. § 1226(a) applies to [Petitioner] rather than the mandatory framework of 8 U.S.C. § 1225(b)." *Id.* at 14. More than two hundred and fifty district across the country have already issued favorable ruling on largely indistinguishable facts. *See, e.g.*, *Herrera Avila v. Bondi*, 2025 WL 2976539 (D. Minn. Oct. 21, 2025); *Belsai v. Bondi*, 2025 WL 2802947 (D. Minn.

9

Oct. 1, 2025); *A.A. v. Olson*, 2025 WL 2886729 (D. Minn. Oct. 8, 2025); *J.O.E. v. Bondi*, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Ferrera Bejarano v. Bondi*, 25-cv-03236 (D. Minn. Aug 18, 2025); *Aguilar Vazquez v. Bondi*, 25-cv-03162 (D. Minn. Aug 19, 2025); *Tiburcio Garcia v. Bondi*, 25-CV-03219 (D. Minn. Aug. 29, 2025); *Herrera Avila v. Bondi*, 25-cv-03741 (D. Minn. Oct. 21, 2025); *Carmona-Lorenzo v. Trump*, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Cortes Fernandez v. Lyons*, 2025 WL 2531539 (D. Neb. Sept. 3, 2025); *Palma Perez v. Berg*, 2025 WL 2531566 (D. Neb. Sept 3, 2025); *Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); *Arce v. Trump*, 2025 WL 2675934 (D. Neb. Sept. 18, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Hernandez Marcelo v. Trump*, 2025 WL 2741230 (S.D. Iowa Sept. 10, 2025); *Sampiao v. Hyde*, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Jimenez v. FCI Berlin*, No. 25-cv-326-LM-AJ (D.N.H. Sept. 8, 2025); *Doe v. Moniz*, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Romero v. Hyde*, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Martinez v. Hyde*, 2025 WL 2084238 (D. Mass. July 24, 2025); *Dos Santos v. Noem*, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Gomes v. Hyde*, 2025 WL 1869299 (D. Mass. July 7, 2025); *Chogllo Chafla v. Scott*, 2025 WL 2688541 (D. Me. Sept. 22, 2025); *Chiliquinga Yumbillo v. Stamper*, 2025 WL 2688160 (D.

Me. Sept. 19, 2025); *Chang Barrios v. Shepley*, 2025 WL 2772579 (D. Me. Sept. 29, 2025); *Chiliquinga Yumbillo v. Stamper*, 2025 WL 2783642 (D. Me. Sept. 30, 2025); *Chanaguano Caiza v. Scott*, 2025 WL 2806416 (D. Me. Oct. 2, 2025); *Ayala Casun v. Hyde*, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Samb v. Joyce*, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Zumba v. Bondi*, 2025 WL 2753496 (D.N.J. Sept. 26, 2025); *Vargas Ramos v. Rokosky*, 2025 WL 3063588 (D.N.J. Nov. 3, 2025); *Leal-Hernandez v. Noem*, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Lopez-Arevelo v. Ripa*, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025); *Padron Covarubias, v. Vergara*, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025); *Hernandez-Fernandez v. Lyons*, 2025 WL 2976923 (W.D. Tex. Oct. 21, 2025); *Hasan v. Crawford*, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Luna Quispe v. Crawford*, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); *Quispe-Ardiles v. Noem*, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *S.D.B.B. v. Johnson*, WL 2845170 (M.D.N.C. Oct. 7, 2025); *Beltran Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Singh v. Lewis*, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); *Sanchez Ballestros v. Noem*, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); *Mejia v. Woosley*, 2025 WL 2933852 (W.D. Ky. Oct. 15, 2025); *Orellana v. Noem*, 2025 WL 3006763 (W.D. Ky. Oct. 27, 2025); *Martinez-Elvir v. Olson*, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025); *Perez Guerra v.*

11

*Woosley*, 25 WL 3046187 (W.D. Ky. Oct. 31, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025);  *Lopez-Campos v. Raycraft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Contreras-Cervantes, v. Raycraft*, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025); *Santos Franco v. Raycraft*, 2025 WL 2977118 (E.D. Mich. Oct. 21, 2025); *Jimenez Garcia v. Raybon*, 2025 WL 2976950 (E.D. Mich. Oct. 21, 2025); *Casio-Mejia v. Raycraft*, 2025 WL 2976737 (E.D. Mich. Oct. 21, 2025); *Morales Chavez v. Director of Detroit Field Office*, 2025 WL 2959617 (N.D. Ohio Oct. 20, 2025); *Sanchez Alvarez v. Noem*, 2025 WL 2942648 (W.D. Mich. Oct. 17, 2025); *Contreras-Lomeli v. Raycroft*, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025); *Rodreguez Carmona v. Noem*, 2025 WL 2992222 (W.D. Mich. Oct. 24, 2025); *Puerto-Hernandez v. Lynch*, 2025 WL 3012033 (W.D. Mich. Oct. 28, 2025); *Marin Garcia v. Noem*, 2025 WL 3017200 (W.D. Mich. Oct. 29, 2025); *Ruiz Mejia v. Noem*, 2025 WL 3041827 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, 2025 WL 3039266 (W.D. Mich. Oct. 31, 2025); *Escobar Ruiz v. Raycraft*, 2025 WL 3039255 (W.D. Mich. Oct. 31, 2025); *Alejandro v. Olson*, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025); *B.D.V.S. v. Forestal*, 2025 WL 2855743 (S.D. Ind. Oct. 8, 2025); *Ochoa Ochoa v. Noem*, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); *Miguel v. Noem*, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025);  *Cuevas Guzman v. Andrews*, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); *Caicedo Hinestroza v.*

*Kaiser*, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025); *Zaragoza Mosqueda v. Noem*, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Hernandez Nieves v. Kaiser*, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *Vasquez Garcia et al. v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Lepe v. Andrews*, No. 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Jabara Oliveros v. Kaiser*, 2025 WL 2677125 (N.D. Cal. Sept. 18, 2025); *Castellanos v. Kaiser*, 2025 WL 2689853 (N.D. Cal. Sept. 18, 2025); *Leon Espinoza v. Kaiser*, 2025 WL 2675785 (E.D. Cal. Sept. 18, 2025); *Cordero Pelico v. Kaiser*, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); *Ortiz Donis v. Chestnut*, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); *Sabi Polo v. Chestnut*, 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025); *Alvarez Chavez v. Kaiser*, 2025 WL 2909526 (N.D. Cal. Oct. 9, 2025); *J.A.C.P. v. Minga Wofford*, 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025); *Martinez Lopez v. Larose*, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025); *Cerritos Echevarria v. Bondi*, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Cardin Alvarez v. Rivas*, 2025 WL 2898389 (D. Ariz. Oct. 7, 2025); *Rosado v. Figueroa*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Mendoza Guitierrez v. Baltasar*, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); *Loa Caballero v. Baltazar*, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Nava Hernandez v. Baltazar*, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Aguilar Merino v. Ripa*, 2025 WL 2941609 (S.D. Fla. Oct. 15, 2025).

The only cases Petitioner is aware of that held otherwise were ultimately dismissed because "the mistakes in the Petition, including the failure [ ] to attach certain referenced exhibits, [that] prevent[ed him] from meeting his burden to show he is entitled to habeas relief." *Vargas Lopez v. Trump*, 2025 WL 2780351, at *2 (D. Neb. Sept. 30, 2025) or by courts that entirely failed to account for the statutory language or wrestle with the plain language of the statute at 8 U.S.C. § 1225(b)(2)(A) requiring that an applicant for admission under that section must also be "seeking admission" at the time of the detention. *See Pena v. Hyde*, 2025 WL 2108913 (D. Mass. July 28, 2025); *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025). The other contrary decisions run afoul of the cannon against surplusage by recharacterizing distinct, statutorily defined, language at 8 U.S.C. § 1225(b)(2)(A) as "an alternate phrasing," and improperly redefining the term "admission" to one seeking status inside the United States. *See Cirrus Rojas, v. Olson*, 2025 WL 3033967, at *8 (E.D. Wis. Oct. 30, 2025); *Mejia Olalde v. Noem*, No. 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025).

The Courts taking Petitioner's position all found as much because Petitioner's "statutory construction better aligns with the text of Sections 1225(b) and 1226 and better harmonizes the two statutes" and because "[t]he government's interpretation contravenes the plain text of Section 1226(a) and would render superfluous Section 1226(c), which mandates the detention of certain noncitizens and is the sole

exception to Section 1226(a)'s discretionary framework." *Gomes*, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025). Longstanding practice and legislative history were also instructive. *See Maldonado*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025).

As such, Petitioner is also likely to succeed on the merits of his claim that 8 U.S.C. § 1225(b)(2)(A) does not apply to him.

### a. The Plain Text Illustrates that 8 U.S.C. § 1225(b)(2)(A) Cannot Apply as Petitioner Was Not "Seeking Admission" When He Was Detained on November 3, 2025.

The text and structure of the statute illustrate that 8 U.S.C. § 1225(b)(2) is totally inapplicable now, years after Petitioner first arrived and entered into the United States. As the Supreme Court has held, while "Section 1225(b) 'authorizes the Government to detain certain aliens *seeking admission into the country*,' Section 1226 'authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings.'" *Gomes*, 2025 WL 1869299, at *2 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)). Petitioner was apprehended more than a hundred miles from the nearest border and nowhere near a port of entry. He was not "seeking admission into the country." He was already here, and has been for nearly 20 years.

The statutory text makes it clear that, at the time of his 2025 detention, Petitioner was not "seeking admission" as contemplated at 8 U.S.C. § 1225(b)(2)(A). In reading a statute, "'we must 'give effect, if possible, to every clause and word of

[the] statute.'" *Fischer v. United States*, 603 U.S. 480, 486 (2024) (citing *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). A comprehensive reading of 8 U.S.C. § 1225 illustrates that both 8 U.S.C. § 1225(b)(1) and 8 U.S.C. § 1225(b)(2) apply only to those arriving at the border or those who have recently arrived.

"[W]e start where we always do: with the text of the statute." *Van Buren v. United States*, 593 U.S. 374 (2021). In interpreting 8 U.S.C. § 1225(b)(2), it is critical to note how the qualifier "seeking admission" limits the class of aliens to which 8 U.S.C. § 1225(b)(2) applies to those seeking entry into the United States from outside the country, either at the border or a port of entry. In this way, an "alien present in the United States who has not been admitted" is only subjected to 8 U.S.C. § 1225(b)(2) if he is "seeking admission."

As the Supreme Court has held:

> It is important to note at the outset that our immigration laws have long made a distinction between those aliens who have come to our shores **seeking admission** … and **those who are within the United States after an entry**, **irrespective of its legality**. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely "on the threshold of initial entry."

*Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (citing *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)) (emphasis added).  Petitioner was plainly beyond the threshold of entry when detained.

16

This is particularly notable given that the term "admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). As always, "we start … with the text of the statute," *Van Buren*, 593 U.S. 374, so to be "seeking admission," a person must be seeking "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). This is augmented by long-held interpretations of "[t]he word 'entry' [which] by its own force implies a coming from outside." *U.S. ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929).

Petitioner is not outside the United States, nor did his apprehension occur at the threshold of the United States, nor has he been outside the country for years. He is not seeking admission into the country at this time, nor was he at the time of his 2025 detention. As such, 8 U.S.C. § 1225(b)(2) cannot apply to him.

The remainder of the INA's definition of "admission" reinforces the conclusion that "admission" contemplates entry from outside. The provisions related to when a lawful permanent resident ("LPR") will be treated as "seeking an admission" bear this out.

> An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission … unless the alien-
>
> (i)    has abandoned or relinquished that status,

17

      (ii)     has been absent from the United States for a continuous period in excess of 180 days,

      (iii)    has engaged in illegal activity after having departed the United States,

      (iv)    has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,

      (v)     has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or

      (vi)    is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

8 U.S.C. § 1101(a)(13)(C). Once again, an "admission" necessarily contemplates entry from outside the territorial boundaries of the United States. To be "seeking admission" as contemplated under 8 U.S.C. § 1225(b)(2), an alien must be entering from abroad. The provision clearly applies at and immediately around the border.

    If that were not enough, the "[a]dmission of immigrants into the United States" is governed under INA § 211, which requires "a valid unexpired immigrant visa … and [ ] a valid unexpired passport or other suitable travel document." 8 U.S.C. § 1181(a). Moreover, those seeking admission are "admitted into the United States."

*Id.* This also necessarily contemplates an alien "seeking entry" from outside the United States.

This is also consistent with how the pre-IIRAIRA INA distinguished between aliens present in the United States and those seeking to enter. Prior to 1997, "[t]he deportation hearing [was] the usual means of proceeding against an alien already physically in the United States, and the exclusion hearing [was] the usual means of proceeding against an alien outside the United States seeking admission." *Landon v. Plasencia*, 459 U.S. 21, 25 (1982).

In fact, the term "seeking admission" was plucked from former 8 U.S.C. § 1225, which governed "exclusion proceedings" and the "[t]he inspection ... of aliens (including alien crewmen) seeking admission or readmission to ... the United States" who, then as now, were "examined by one or more immigration officers at the discretion of the Attorney General and under such regulations as he may prescribe...." 8 U.S.C. § 1225(a) (1994). Under the prior regime, those who were "seeking admission" were those "outside the United States seeking admission." *Landon v. Plasencia*, 459 U.S. 21, 25 (1982).

Given that this language, now codified at 8 U.S.C. § 1225, came from the former 8 U.S.C. § 1225, which also governed the "inspection of aliens," the well-established legal principal applies: "[w]hen a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'" *Taggart v.*

19

*Lorenzen*, 587 U.S. 554, 560 (2019). Then as now, those "seeking admission" are those at the border or a port of entry, not those simply present in the United States without admission.

By contrast, long-tenured aliens like Petitioner are not "seeking admission" when they are detained by ICE. While they may be "applicants for admission" under 8 U.S.C. § 1225(a)(1), to "seek admission" they would need to present at a border or port of entry and request "admission into the United States." 8 U.S.C. § 1181.

This is also consistent with how all Circuits have "construe[d] the meaning of the phrase 'at the time of application for admission'" in the context of 8 U.S.C. § 1182(a)(7), which "refers to the particular point in time when a noncitizen submits an application to physically enter into the United States." *Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020); *see also Marques v. Lynch*, 834 F.3d 549, 561 (5th Cir. 2016) (quoting *Ortiz-Bouchet v. U.S. Atty. Gen.*, 714 F.3d 1353, 1356 (11th Cir. 2013)) ("Section 1182(a)(7) 'only applies to applicants for admission and not to immigrants ... who sought post-entry adjustment of status while already in the United States.'"). Just as an "application for admission" occurs at the specific moment an application is applied for, seeking admission also occurs at the moment admission is sought.

The subsection title further reinforces this conclusion. While they do not supplant the statutory text, "statutory titles and section headings 'are tools available

for the resolution of a doubt about the meaning of a statute.'" *Fla. Dep't of Revenue v. Piccadilly Cafeterias*, 554 U.S. 33, 47 (2008) (citing *Porter v. Nussle*, 534 U.S. 516, 528 (2002)). Section 1225 is titled "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; [and] referral for hearing." 8 U.S.C. § 1225. All of this is squarely related to inspection at or near a point of entry, not interior enforcement against aliens who have been present for years.

The "catchall" nature of 8 U.S.C. § 1225(b)(2) is not limitless either. It has to reflect the general parameters of 8 U.S.C. § 1225(b)(1) and respond to the similarly situated individuals arriving to the country who are not arriving aliens. As the Supreme Court has noted, 8 U.S.C. § 1225(b)(2) is a "catchall" that "applies to most other applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 281 (2018). "The ejusdem canon applies when 'a catchall phrase' follows 'an enumeration of specifics, as in dogs, cats, horses, cattle, and other animals.'" *Fischer v. United States*, 603 U.S. 480, 509 (2024) (quoting A. Scalia & B. Garner, READING LAW § 32, at 199 (2012)). "We often interpret the catchall phrase to 'embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" *Id.*

8 U.S.C. § 1225(b)(2) follows in line with the specificity contained in 8 U.S.C. § 1225(b)(1). Section 1225(b)(2) is titled "inspection of other aliens." "Other aliens" nonetheless has a proximity limitation—around the border and ports of entry. It is

21

not a force multiplier. After all, this catchall provision would be an odd place to hide the most far-reaching and consequential detention authority in the INA. "Congress does not 'hide elephants in mouseholes.'" *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 677 (2023). The Supreme Court recognized this limited reach of § 1225(b)(2) when it held, "An alien arriving in the United States must be inspected by an immigration official, 66 Stat. 198, as amended, 8 U.S.C. § 1225(a)(3), and, unless he is found 'clearly and beyond a doubt entitled to be admitted,' must generally undergo removal proceedings to determine admissibility, § 1225(b)(2)(A)." *Clark v. Martinez*, 543 U.S. 371, 373 (2005).

Section 1225(b)(2) addresses a person who presents some evidence he or she is entitled to entry, but the examining officer is not clearly and beyond a reasonable doubt convinced. For example, Respondents invoke this provision frequently to LPRs returning from travel abroad.  Precedent has acknowledged this distinction in purpose within § 1225(b).  Detention of non-arriving aliens attempting to enter from the outside is permissible because "§ 235(b)(2) requires the INS to detain aliens 'not clearly and beyond a doubt entitled to be admitted' … in practice, these provisions often result in the mandatory detention of returning lawful permanent residents at places of inspection." *Tineo v. Ashcroft*, 350 F.3d 382, 387 (3rd Cir. 2003); *see also Kasneci v. Dir., Bureau of Immigr. & Customs Enf't*, 2012 WL 3639112, at *3 (E.D.

Mich. Aug. 23, 2012); *Bautista v. Sabol*, 2011 WL 5040894, at *4 (M.D. Pa. Oct. 24, 2011).

The Court must also consider that the government's regulation identifies the limited scope of § 1225(b)(2).  It states, "Lawful permanent residents have verifiable entry documents ('green cards') which prevents them from being deemed clearly inadmissible. <u>All aliens who are not clearly inadmissible, but are also not clearly admissible,</u> are placed in regular removal proceedings. INA § 235(b)(2)."  8 C.F.R. § 235.3(b)(5)(ii).  As identified in statute, this group includes LPRs who appear to have abandoned status, been absent from more than 180 days, departed during pendant removal or extradition hearings, committed certain crimes, or who are attempting to enter the United States at a place other than a designated port of entry. *See* 8 U.S.C. § 1101(a)(13)(C). Such LPRs are definitionally "seeking admission" but are not necessarily inadmissible for fraud or a lack of travel documents under 8 U.S.C. §§ 1182(a)(6)(C); 1182(a)(7), so they do not fall within the provisions of 8 U.S.C. § 1225(b)(1)(A). Instead, they fall into 8 U.S.C. § 1225(b)(2)(A)'s catchall.

Nor does Petitioner's reading create a surplusage issue in which the 8 U.S.C. § 1225(b)(2) catchall becomes redundant in light of 8 U.S.C. § 1225(b)(1). While 8 U.S.C. § 1225(b)(1) expressly applies to those who are "arriving," and 8 U.S.C. § 1225(b)(2)(A) expressly excludes those "to whom paragraph (1) applies," 8 U.S.C. § 1225(b)(2)(B)(ii), there is a universe of "applicants for admission" who are

"seeking admission" from outside the United States that fall outside of 8 U.S.C. § 1225(b)(1), and therefore fall into the catchall at 8 U.S.C. § 1225(b)(2).

These include most obviously any "alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry." 8 U.S.C. § 1225(b)(1)(F). These individuals are expressly exempted from 8 U.S.C. § 1225(b)(1). They fall into 8 U.S.C. § 1225(b)(2). It also includes lawful permanent residents suspected of abandoning residence or criminality. *See* 8 U.S.C. § 1101(a)(13)(C); *Tineo*, 350 F.3d at 387. They too fall into 8 U.S.C. § 1225(b)(2).

The neighboring inadmissibility provision at 8 U.S.C. § 1182(a)(9)(A) reinforces § 1225's limited application to the borders and ports of entry. This provision lumps those who are "removed under 8 U.S.C. § 1225(b)(1) of this title" together with those removed "at the end of proceedings under section 1229a of this title initiated upon the alien's arrival in the United States." 8 U.S.C. § 1182(a)(9)(A)(i). Given that the only provision of law that appears to authorize full proceedings under 8 U.S.C. § 1229a for those arriving at the border is 8 U.S.C. § 1225(b)(2)(A), this inadmissibility provision reinforces Petitioner's interpretation that 8 U.S.C. § 1225(b)(2)(A), like 8 U.S.C. § 1225(b)(1), applies to those arriving at or near the border. That is why removals in 1229a proceedings initiated upon arrival at the border—that is, 8 U.S.C. § 1225(b)(2)(A) removals—are treated like

removals under 8 U.S.C. § 1225(b)(1), triggering a five-year inadmissibility period, whereas those otherwise "ordered removed under section 1229a of this title" are subject to a ten-year bar. *See* 8 U.S.C. § 1182(a)(9)(A)(ii). This dichotomy between 1) border detention and removal, and 2) interior enforcement, is clear in both provisions.

8 U.S.C. § 1225(a)(3) does not undercut this point.  8 U.S.C. § 1225(a)(3) defines who "shall be inspected by immigration officers." It does not define who "shall be detained." Moreover, the notion that the word "or" somehow means that the subsequent phrase is necessarily synonymous with the proceeding one is meritless. Instead:

> While that can sometimes introduce an appositive—a word or phrase that is synonymous with what precedes it ("Vienna or Wien," "Batman or the Caped Crusader")—its ordinary use is almost always disjunctive, that is, the words it connects are to "be given separate meanings."

*United States v. Woods*, 571 U.S. 31, 45–46 (2013) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). In other words, "or" is generally disjunctive, and here, some "applicants for admission" are "seeking admission," and some who are not "applicants for admission" may be "otherwise seeking admission," and all those people are subject to inspection.  *Romero v. Hyde* recently illustrated this poignantly. *See* 2025 WL 2403827, at *10 (illustrative graph). Ultimately, only those who are both an "applicant for admission" and "seeking admission … shall be detained." 8

U.S.C. § 1225(b)(2)(A). The provisions are different and address different things. The Court must ensure it gives each an independent meaning.

In cases reaching contrary conclusions, courts reflected a fundamental misunderstanding of the legal issue at hand. For example, in *Cirrus Rojas v. Olson*, 2025 WL 3033967 (Oct. 30, 2025), the court failed to meaningfully engage with or analyze the relevant statutory framework. One example in that case is the judge's conclusion that by applying for asylum, the petitioner was necessarily seeking "admission" to the United States, as they were requesting relief to remain in the country, among other conclusions in the decision. *Id.* at *8. This reasoning, however, is flawed. As explained above, an individual already present in the United States is not someone seeking "admission", even if they are seeking some form of relief in the United States. Such circumstances do not trigger the catchall provisions of 8 U.S.C. § 1225(b)(2). This fundamental understanding of the term "admission," also characterizes the decision in *Mejia Olalde v. Noem*, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025). Accordingly, this Court should decline to give deference to these recent, analytically deficient decisions, particularly when contrasted with the numerous other cases that have correctly held that similarly situated individuals are not "arriving aliens" and are therefore not subject to mandatory detention but are eligible for bond hearings.

Petitioner was detained years after entering the United States and more than a hundred miles from any border or port of entry. At the time of his arrest, he was not, and still is not, seeking admission. Therefore, 8 U.S.C. § 1225(b)(2)(A) cannot apply.[1] Given that 8 U.S.C. § 1225(b)(2) cannot apply, so a bond hearing under 8 U.S.C. § 1226(a) is appropriate.

### b. *Canons Against Surplusage Require Finding that Petitioner Is Not Subject to 8 U.S.C. § 1225(b)(2).*

As a rule, courts do not "adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019). In fact, this "canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)).

Interpreting 8 U.S.C. § 1225(b)(2) as Respondents do would have the Court render the entire Laken Riley Act (LRA) superfluous. In the LRA, Congress added language to 8 U.S.C. § 1226(c) that directly references people who have entered without inspection or who are present without authorization. *See* Laken Riley Act,

---

[1] *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) is owed no deference under *Loper Bright*, 603 U.S. at 369, and simply regurgitates the same tired arguments that have been rejected by at least 20 district courts throughout the country.

PL 119-1, January 29, 2025, 139 Stat 3. Pursuant to these amendments, an alien who "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 212(a) of this title; and is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person" is subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(E).

If everyone inadmissible under 8 U.S.C. § 1182(a)(6)(A) is already subject to mandatory detention under 8 U.S.C. § 1225(b)(2), then there would be no need for the LRA at all. Those present without admission who commit crimes would not require a separate provision to mandate detention. That would render an entire provision of the INA surplusage and runs afoul of the maxim that "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Pierce Cnty. v. Guillen*, 537 U.S. 129, 145 (2003). This cannot stand and definitively illustrates that 8 U.S.C. § 1225(b)(2) is confined to the borders and ports of entry. It does not apply to Petitioner.

### c. Applicable Precedent Cuts in Petitioner's Favor.

To the extent that the Court is ruling on the *likelihood* of success on the merits, the existence of at least thirty decisions affirming his decision, in contrast to just one incomplete and poorly plead decision in Respondents' favor, certainly suggests he

has illustrated a strong likelihood of success. More than two hundred district courts,

issuing more than 700 decisions, spread from North Dakota, Minnesota, Iowa,

Massachusetts, Louisiana, New York, California, New York, Arizona and beyond

have endorsed Petitioner's petition on similar facts. *Supra* § II.B. Less than a dozen

district courts have gone the other way. *See, e.g.*, *Vargas Lopez*, 2025 WL 2780351;

*Pena*, 2025 WL 2108913; *Chavez*, 2025 WL 2730228; *Cirrus Rojas*, 2025 WL

3033967; *Mejia Olalde*, No. 2025 WL 3131942.

    The weight of authority favors Petitioner.

### d. *Legislative History and Longstanding Practice Illustrate that Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(2).*

    If the structure and language did not make 8 U.S.C. § 1225(b)(2)'s

inapplicability to this case clear, Congress did so expressly. "Section 1226(a)'s

predecessor statute, § 1252(a), included discretionary release on bond." *Maldonado*,

2025 WL 2374411, at *11 (D. Minn. Aug. 15, 2025) (citing 8 U.S.C. § 1252(a)

(1994)). In House reports accompanying the legislation that enacted 8 U.S.C. §

1225(b)(2), the legislators noted how the simultaneously enacted detention authority

that now lives at 8 U.S.C. § 1226(a) merely "restates the [then] current provisions in

section 242(a)(1) regarding  the authority of the Attorney General to arrest, detain,

and release on bond an alien who is not lawfully in the United States." H.R. Rep.

No. 104-469, pt. 1, at 229 (1996); *see also* H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.) (same).

Both provisions were created in the same Act. *See* Illegal Immigration Reform and Immigration Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-585 ("IIRIRA"). It seems preposterous that Congress would enact one provision, at 8 U.S.C. § 1226(a)(2)(A), for the purpose of authorizing "the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States" just one section after enacting a provision that DHS now claims subjects those exact same people to mandatory detention. *See* 8 U.S.C. § 1225(b)(2).

Furthermore, from 1996 to 2025, Respondents contended that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323. "[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect," particularly "when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained

consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024).

This is long-held Agency practice, and it makes clear that, despite Respondents'

newfound position, 8 U.S.C. § 1226 governs Petitioner's detention, and as such, he

is eligible for bond.

### C. Relevant Hardships and Public Interest

"The balance of the equities and the public interest … factors merge [when]

the federal government is the party opposing the injunction." *Missouri v. Trump*, 128

F.4th 979, 996–97 (8th Cir. 2025). These factors require the Court to consider

"whether the movant's likely harm without a preliminary injunction exceeds the

nonmovant's likely harm with a preliminary injunction in place." *Cigna Corp. v.

Bricker*, 103 F.4th 1336, 1347 (8th Cir. 2024).

Courts have recognized that the public interest includes upholding

constitutional safeguards, ensuring due process, and preventing unnecessary

deprivation of liberty. *See, e.g.*, *Mohammed H. v. Trump*, 2025 WL 1692739, at *6

(D. Minn. June 17, 2025) (rejecting public-interest argument where detention rested

solely on automatic stay without evidence); *Günaydın*, 2025 WL 1459154, at *10

(same). The public interest is not served by needlessly incarcerating a man with no

criminal conviction in violation of statute.

Granting Petitioner's injunctive relief is fully consistent with the

government's ability to enforce its immigration laws. If injunctive relief is granted,

DHS retains all tools to continue his removal case, to monitor his compliance with conditions of release, and to seek re-detention if circumstances change. In short, the government can enforce the law, and the Court can ensure that enforcement proceeds within constitutional bounds by ordering the Respondents release Respondent or schedule a bond hearing within three days.

The harms to Petitioner have been articulated, *supra*, and they are severe. In contrast, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025). The Eighth Circuit has called the federal interest in an action is "minimal" where the plaintiff has illustrated a "strong likelihood of success in showing it exceeds agency authority." *Id.* As that is precisely the case here, all factors favor the issuance of a TRO or preliminary injunction.

## **CONCLUSION**

The evidence compels the conclusion that Petitioner, who has demonstrated a strong likelihood of success on the merits, will suffer significantly and irreparably in the absence of injunctive relief. As such, injunctive relief must be granted, enjoining Respondents from moving Petitioner outside of the District of North Dakota and ordering Respondents to release Petitioner or provide him with a bond hearing within three days.

Respectfully submitted,

/s/ Cameron Giebink                               December 10, 2025
Cameron Giebink                                  **Date**
MN Attorney Lic. No. 0402670
Wilson Law Group
3019 Minnehaha Avenue
Minneapolis, MN 55406
(612) 436-7100 / cgiebink@wilsonlg.com

Attorney for Petitioner