# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Eliseo Cruz Bautista, | ) |
|                 Petitioner, | ) |
| vs. | ) **ORDER GRANTING PETITION** |
| | ) **FOR HABEAS RELIEF** |
| Pamela Bondi, Attorney General; | ) Case No.: 1:25-cv-280 |
| Kristi Noem, Secretary, U.S. Department of Homeland Security; Department of Homeland Security; Todd M. Lyons, Acting Director of Immigration and Customs Enforcement; Immigration and Customs Enforcement; David Easterwood, Acting Director, St. Paul Field Office Immigration and Customs Enforcement; and Kelly Leben, Sheriff of Burleigh County, | ) |
|                 Respondents. | ) |

Before the Court is Petitioner Eliseo Cruz Bautista's Petition for Writ of Habeas Corpus based on 28 U.S.C. § 2241, Motion for Temporary Restraining Order or Preliminary Injunction, and Motion for Hearing, each filed on December 10, 2025. See Doc. Nos. 1, 3, 6, and 8. Cruz Bautista requests essentially the same relief in both his habeas petition and his motion for a temporary restraining order or preliminary injunction. Since the parties have briefed the merits of Cruz Bautista's request for habeas relief (Doc. Nos. 1 and 9), the Court will skip discussion of interim relief and resolve the merits of Cruz Bautista's habeas petition. See Ortiz Beltran v. Bondi, No. 25-04604 (MJD/DTS), 2025 WL 3719856, at *1 (D. Minn. Dec. 23, 2025) (granting habeas corpus petition and denying requested interim relief as moot); Avalos v. Bondi, No. C25-4063-LTS-KEM, 2025 WL 3530162, at *3 n.7 (N.D. Iowa Dec. 9, 2025) (same); Sanchez Alvarez v.

1

Noem, No. 25-cv-1090, 2025 WL 2942648, at *10 (W.D. Mich. Oct. 17, 2025) (same); Sanchez Ballestros v. Noem, No. 25-cv-594, 2025 WL 2880831, at *1 (W.D. Ky. Oct. 9, 2025) (same).

I.   **BACKGROUND**

Cruz Bautista is a citizen of Mexico who entered the United States without inspection on March 31, 2006, at the age of fifteen. See Doc. No. 1. Cruz Bautista is a resident of Burleigh County, North Dakota. Id. On September 8, 2015, Petitioner's mother applied for a U-visa which was approved on January 27, 2020. Id. However, Petitioner was denied derivative status upon its approval because he was too old to qualify as her child under the immigration laws. Id. On August 17, 2020, Cruz Bautista applied for Deferred Action for Childhood Arrivals ("DACA"), but was denied because the United States Immigration and Citizenship Services had stopped taking applications. Id. On February 4, 2021, Petitioner applied for DACA again, and this application remains pending. Id. Petitioner has no criminal history besides minor traffic violations. Id.

On July 10, 2025, the Department of Homeland Security (DHS) issued guidance that "revisited its legal position on detention and release authorities" as to non-citizens in the United States. See U.S. Customs and Border Protection, Detention of Applicants for Admission, https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf. The DHS stated that all aliens who enter the country without being properly admitted are "subject to mandatory detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from DHS custody except by INA § 212(d)(5) parole." Id. As a result, the DHS stated that the "only aliens eligible for a custody determination and release on recognizance, bond, or conditional parole under INA § 236(a) [8 U.S.C. § 1226(a)] are aliens admitted to the United States and chargeable with deportability under INA § 237 [8 U.S.C. § 1127]." Id. This new policy

reversed decades of practice by federal immigration officials who had previously prioritized detention only for those considered dangerous or at risk to flee.

On September 2, 2025, Respondents effectuated a traffic stop of Cruz Bautista as he was leaving work and took him into custody. Id. On September 19, 2025, Cruz Bautista requested a bond hearing. Id. However, on October 2, 2025, an Immigration Judge held the court lacked jurisdiction to hold such a hearing. Id. This finding was based on a decision from the Board of Immigration Appeals, *Matter of Yajure-Hurtado*, where the BIA held that the DHS policy described above was lawful. See Matter of Yajure-Hurtado, 29 I. & N. Dec. 216 (BIA 2025).

On October 3, 2025, the Petitioner married his girlfriend, a United States citizen. Id. On November 21, 2025, an Immigration Judge ordered Petitioner to be removed to Mexico. Id. Cruz Bautista alleges this occurred after his counsel failed to bring his pending DACA application to the attention of the court. Id. Cruz Bautista appealed this removal decision to the Board of Immigration Appeals on November 25, 2025. See Doc. No. 12-1. On December 1, 2025, Petitioner again requested a bond hearing, but the Immigration Judge denied the request on the grounds that no material change in circumstances had occurred since Cruz Bautista's first bond request.[1] Id.

On November 20, 2025, the United States District Court for the Central District of California granted partial summary judgment in *Maldonado Bautista v. Santacruz*, finding the DHS's interpretation of INA § 235(b), described above, to be unlawful as to the named plaintiffs. Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). On November 25, 2025, that same court granted class certification to "[a]ll

---

[1] The Immigration Judge denied a custody redetermination for the following reason: "Respondent filed a barebones motion for bond asserting changed circumstances. This Court previously denied bond on October 2, 2025, and no appeal of that decision was filed. 'After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination.' 8 C.F.R. Section 1003.19(e). No such showing has been articulated or established in this bond request. Therefore, the request for a subsequent bond consideration is denied." See Doc. No. 11-3.

3

noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the [DHS] makes an initial custody determination." Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). In the order certifying the class, the court stated that it extends the same declaratory relief granted to the petitioners in the partial summary judgment to all members of the class. Id.

This development seems to have prompted Cruz Bautista to request a third bond hearing. On December 11, 2025, at said hearing, the Immigration Judge made two findings. First, the court found that since the partial summary judgment order in *Maldonado* is not a final judgment, it is not binding. See Doc. No. 11-3. Therefore, the court found that *Matter of Yajure Hurtado* remained in effect, and the court did not have jurisdiction to grant a bond hearing. See Doc. No. 11-3. Second, the Immigration Judge stated that even if the court had authority to grant Cruz Bautista's release on bond, the court would deny the request for flight risk. Id. The court stated that Cruz Bautista's "requests for relief were denied, and he was ordered removed. While [Cruz Bautista] remains within his [removal order] appeal period, the removal order is a significant factor indicating that [Cruz Bautista] presents a serious flight risk if released on bond at this time." Id. It is unclear to the Court why the Immigration Judge was unaware that Cruz Bautista had in fact filed an appeal of his removal order on November 25, 2025. See Doc. No. 12-1. However, the parties do not contest the fact that it was filed on that date.

Cruz Bautista is currently being held at the Burleigh County jail in Bismarck, North Dakota. Id. In his Petition for Writ of Habeas Corpus, Cruz Bautista alleges that the Respondents'

4

detention of him under 8 U.S.C. § 1225(b)(2)(A) violates his due process rights and federal law.[2] Cruz Bautista claims he has been wrongly classified as a Section 1225(b)(2) detainee (whose detention is mandatory) rather than a Section 1226 detainee (whose detention is discretionary and who is entitled to a bond hearing). Id. Cruz Bautista requests a writ ordering the Respondents to release him from custody or, alternatively, to afford him a bond hearing in accordance with 8 U.S.C. § 1226(a). See Doc. No. 1. The Respondents have filed a response (Doc. No. 9),[3] and Petitioner has filed a reply. See Doc. No. 13. Cruz Bautista's habeas petition has been fully briefed and is ready for disposition.

## II.    DISCUSSION

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); Aditya W. H. v. Trump, Civ. No. 25-1976 (KMM/JFD), 782 F. Supp. 3d 691, 702-03 (D. Minn. May 14, 2025) (collecting cases). The petitioner bears the burden to prove illegal detention by a preponderance of the evidence. See Aditya, 782 F. Supp. 3d at 703 (collecting cases).

In this case, as in more than 1,600 other similar immigration cases filed in federal district courts throughout the country since July 2025, the dispositive issue for the Court to decide in determining whether to grant Cruz Bautista's habeas petition is whether 8 U.S.C. § 1225(b) or 8

---

[2] The Petition alleges six counts: (1) declaratory relief, (2) violation of the INA, 8 U.S.C. § 1225(b)(2), (3) violation of the INA, 8 U.S.C. § 1226(a), (4) violation of the Fifth Amendment of the U.S. Constitution, (5) unlawful denial of release on bond in violation of 8 C.F.R. §§ 236.1, 1236.1, 1003.19, and (6) violation of Class Order in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

[3] The response was filed only on behalf of the federal respondents. Sheriff Kelly Leben did not provide a separate response, nor does the Court find one necessary.

U.S.C. §1226(a) applies. The flood of litigation over this issue continues to inundate the federal district courts—with no end in sight. As explained below, the Court concurs with the overwhelming majority of federal district courts who have ruled on this issue, and concludes that Section 1226(a) applies to the Petitioner. Therefore, the Court will grant the habeas petition.

8 U.S.C. § 1225 and 8 U.S.C. § 1226 both govern the detention of non-citizens pending removal proceedings. Section 1226(a) sets out the "default rule" for the discretionary detention of aliens "already present in the United States." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Under Section 1226(a), immigration authorities may make an initial determination as to detention, but aliens may then request a bond hearing before an immigration judge.[4] 8 U.S.C. § 1226(a); Jennings, 538 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) ("Federal regulations provide that aliens detained under section 1226(a) receive bond hearings at the outset of detention.")). At that hearing, an alien "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." Nielsen v. Preap, 586 U.S. 392, 397-98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)). It is clear Section 1226 governs the process of arresting and detaining aliens found inside the United States pending their removal.

Section 1225 applies to "applicants for admission" which are defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission fall under either Section 1225(b)(1) or Section 1225(b)(2). Jennings, 583 U.S. at 287. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" as well as "certain

---

[4] There is an exception to this provision provided in Section 1226(c) that applies to the detention of criminal aliens. Section 1226(c) imposes mandatory detention on "enumerated categories [of aliens] involving criminal offenses and terrorist activities." Jennings, 583 U.S. at 289. Specific categories of "inadmissible" aliens are subject to mandatory detention. See 8 U.S.C. §§ 1226(c)(1)(A), (D), (E). Neither party has argued Section 1226(c) applies to Cruz Bautista.

6

other aliens designated by the Attorney General in his discretion." Id. Section 1225(b)(2) is a "catchall provision" that applies to almost all other "applicants for admission" not covered by Section 1225(b)(1). Id. at 289. In discussing the application of Section 1225, the United States Supreme Court has stated that the "process of decision [of who may enter the country] generally begins at the *Nation's borders* and *ports of entry*, where the Government must determine whether an alien *seeking to enter the country* is admissible." Id. at 287 (emphasis added). The Supreme Court also stated Section 1225(b) applies to aliens "*seeking admission* into the country." Id. at 289 (emphasis added). Aliens detained pending removal pursuant to Section 1225(b) are not entitled to bond hearings. Jennings, 583 U.S. at 297 ("Read most naturally, §§1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

In summary, aliens detained under 8 U.S.C. § 1225(b) are not entitled to a bond hearing, whereas persons detained under 8 U.S.C. § 1226(a) are—subject to exceptions found at Section 1226(c)—which do not apply in this case. Cruz Bautista argues that he is subject to the discretionary detention framework established in Section 1226(a) because he has been in the United States since 2006 and is therefore an alien "already present in the United States." See Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Cruz Bautista claims that the denial of a bond hearing during his continued detention violates his Fifth amendment right to due process, federal law, and administrative procedures, and he is consequently being detained unlawfully.[5] See Doc.

---

[5] Cruz Bautista also contends that his continued detention without a bond hearing violates the class order declared in Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). However, because Cruz Bautista succeeds on his own statutory claim, the Court need not address whether he is eligible for relief based on the decision in *Maldonado Bautista*.

No. 1. The Respondents argue that Cruz Bautista is subject to mandatory detention under Section 1225(b)(2) because he is "seeking admission" into the United States. See 8 U.S.C. § 1225(b)(2)(A).

Approximately 1,600 federal district court cases across the country have held against the government on this issue to date.[6] As the legal challenges continue to surge, it is estimated that more than 100 new lawsuits are being filed daily. Id. This Court recently ruled on the question of which statute applied to a similarly situated petitioner in *Beltran v. Bondi*, and joined the chorus of federal district courts in finding that the petitioner was entitled to a bond hearing under 8 U.S.C. §1226(a). Beltran v. Bondi, ECF 1:25-cv-258 (D.N.D. Dec. 5, 2025).

The Respondents acknowledge that the legal issue presented in this petition is the same as addressed in *Beltran*, and state they recognize that "numerous other district courts in the Eighth Circuit and around the United States have ruled [against their interpretation of the statutes.]" See Doc. No. 9. Nonetheless, the Respondents state that "it continues to be the position of the United States that the detention of Petitioner Cruz Bautista is lawful under 8 U.S.C. § 1225(b)(2)(A)." Id. The Respondents have not presented any new arguments or any new case law than what was presented to the Court in *Beltran v. Bondi*. In fact, the Respondents submitted a brief that is nearly identical to what the Respondents submitted to this Court in *Beltran*. Because of the virtual

---

[6] Kyle Cheney, *Hundreds of Judges reject Trump's mandatory detention policy, with no end in sight*, POLITICO (Jan. 5, 2026), https://www.politico.com/news/2026/01/05/trump-administration-immigrants-mandatory-detention-00709494; Fuentes v. Olson, No. 25-CV-4456 (LMP/ECW), 2025 WL 3524455, at *1 (D. Minn. Dec. 9, 2025) (citing Demirel v. Fed. Detention Ctr. Phila., Civ. No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025)). See, e.g., Avila, 2025 WL 2976539, at *5-7; Eliseo A.A. v. Olson, No 25-3381, 2025 WL 2886729, at *2-4 (D. Minn. Oct. 8, 2025); Belsai, 2025 WL 2802947, at *5; Singh v. Lyons, 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); Sanchez Ballestros v. Noem, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); Lepe v. Andrews, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Giron Reyes v. Lyons, 2025 WL 2712417, at *4-5 (N.D. Iowa Sept. 23, 2025); Hasan v. Crawford, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); Velasquez Salazar v. Dedos, 2025 WL 2676729 (D. N.M. Sept. 17, 2025); Vasquez Garcia v. Noem, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Pizarro Reyes, 2025 WL 2609425, at *4-7; Lopez-Campos v. Raycraft, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Leal-Hernandez v. Noem, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Romero v. Hyde, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Arrazola-Gonzalez v. Noem, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Aguilar Maldonado v. Olson, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).

unanimity among federal district courts, the lack of new argument for the Court to address, and the factual similarity between the present case and *Beltran*, the Court sees no reason to stray from its decision in *Beltran*.

The Court incorporates by reference the legal reasoning in its December 5, 2025, Order in *Beltran v. Bondi*, ECF 1:25-cv-258 (D.N.D. Dec. 5, 2025), and concludes that the Petitioner is subject to the provisions of 8 U.S.C. § 1226(a) rather than 8 U.S.C. § 1225(b)(2)(A). As a multitude of other federal district courts have concluded, "Respondents' interpretation of the statute (1) disregards the plain meaning of Section 1225(b)(2)(A); (2) disregards the relationship between Sections 1225 and 1226; (3) would render a recent amendment to Section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation." Beltran, ECF 1:25-cv-258 (quoting Alejandro v. Olson, 2025 WL 2896348, at 6 (S.D. Ind. Oct. 11, 2025)).

Cruz Bautista has been in the United States since March 31, 2006—nearly 20 years. See Doc. No. 1. Thus, he is an alien "already in the country" rather than an alien "seeking admission into the country." See Jennings, 583 U.S. at 287-89. Accordingly, his detention is governed by Section 1226(a)'s discretionary framework, and not the mandatory detention provisions of Section 1225(b). See id. The continued detention of Cruz Bautista under 8 U.S.C. § 1225(b) without a bond hearing is contrary to federal law. Therefore, the Court will order the Respondents to provide Cruz Bautista with a bond hearing in accordance with 8 U.S.C. § 1226(a).

Lastly, the Court will address the effect of the Immigration Judge's December 11, 2025 order on the Petitioner's habeas petition. See Doc. No. 11-3. As stated above, upon Cruz Bautista's third time requesting a bond hearing, an Immigration Judge once again found that the court did not have jurisdiction to grant Cruz Bautista's request for a bond determination hearing. Id. However, the Immigration Judge also made a finding in the alternative that even if the court had such

authority, it would deny Cruz Bautista's request for release on bond for reason of flight risk. Id. The court stated that "[w]hile [Cruz Bautista] remains within his appeal period [of the removal order], the removal order is a significant factor indicating that [Cruz Bautista] presents a serious flight risk if released on bond at this time." Id. However, it is undisputed that Cruz Bautista filed an appeal of his removal order on November 25, 2025. See Doc. No. 12-1. The Court notes that since the Immigration Judge based their flight risk determination on the fact that the Petitioner was "ordered removed" but "remain[ed] within his appeal period," see Doc. No. 11-3, the filing of an appeal likely constitutes a changed circumstance that justifies a subsequent bond redetermination.[7] Consequently, although not argued to the contrary by the Respondents, the Court finds that the docketing of the appeal allows this petition to still present a live controversy over which the Court may render meaningful relief.

### III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant case law. For the reasons set forth above, it is hereby ordered that:

(1.) The Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) is **GRANTED** to the extent it requests a bond hearing before an Immigration Judge.

(2.) The Respondents shall provide the Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within fourteen (14) days from the date of this Order.

(3.) If the Respondents do not provide the Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, the Petitioner must be immediately released from detention.

(4.) Within twenty (20) days from the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing

---

[7] Under 8 C.F.R. § 1003.19(e), "[a]fter an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's *circumstances have changed materially* since the prior bond redetermination." (emphasis added).

10

conducted pursuant to this Order, or if no bond hearing is held, advise the Court regarding the Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required.

(5.) The Respondents are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of the Petitioner from the District of North Dakota and the District of Minnesota before the ordered bond hearing.

(6.) The Petitioner's motion for a temporary restraining order or preliminary injunction as to his habeas petition (Doc. Nos. 3 and 8) and motion for a hearing (Doc. No. 6) are moot and are therefore **DENIED**.

**IT IS SO ORDERED**.

Dated this 7th day of January, 2026.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court